## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

KESHANA DORSEY,

<em>Plaintiff,</em>

-against-

OPTUM SERVICES INC., a Minnesota
Foreign Corporation,

<em>Defendant.</em>

**Case No. 0:25-cv-00219**

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff KESHANA DORSEY ("Plaintiff"), by her attorneys, CONSUMER JUSTICE LAW FIRM, PLC, hereby complains of the Defendant, upon information and belief, as follows:

### NATURE OF THE CASE

1.  Plaintiff complains pursuant to the Americans with Disabilities Act of 1990 , 42 U.S.C. § 12101, *et seq*. ("ADA"), the Family and Medical Leave Act , 29 U.S.C. § 2601 *et seq*. ("FMLA"), and the Minnesota Human Rights Act, Minn. Stat. § 363A.01, *et seq*. ("MHRA"),  and seeks damages to redress the injuries she suffered as a result of being discriminated against, subjected to a hostile work environment on the basis of her disability, retaliated against, and ultimately terminated by her employer.

### JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

2.  Jurisdiction of this Court is proper under 42 U.S.C. § 12101 and 28 U.S.C. § 1331.

3.  The Court has supplemental jurisdiction over the claims that Plaintiff has brought

under state law pursuant to 28 U.S.C. § 1367.

4.   Venue is proper in this Court under 28 U.S.C. § 1391 (a) and (b) because "a substantial part of the events or omissions giving rise to the claim" occurred within the District of Minnesota, Defendant has a location and employees within this District and Defendant conducts substantial and not isolated business within the District of Minnesota.

5.   By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or around August 12, 2024 against OPTUM SERVICES INC.; (b) receiving a Notice of Right to Sue from the EEOC on October 29, 2024; and (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action.  A copy of the Notice of Right to Sue is annexed hereto as Exhibit A.

## PARTIES

6.   Plaintiff is a resident of the State of Maryland, County of Baltimore.

7.   At all relevant times, Plaintiff was employed by Defendant's Minnesota company, as a remote employee in Maryland.

8.   Upon information and belief, Defendant OPTUM SERVICES INC. ("OPTUM") is a Minnesota foreign business corporation, engaging in business in Minnesota.

9.   Upon information and belief, Defendant OPTUM employs fifteen or more employees.

10.  Defendant OPTUM is an "employer" within the meaning of the ADA and the

MHRA and is located within the jurisdiction of this Court.

## STATEMENT OF FACTS

11. On or around September 20, 2021, Plaintiff began working remotely for OPTUM as a "Clinical Administrative Coordinator."

12. As a Clinical Administrative Coordinator, Plaintiff reported to supervisor Juwandda Strong ("Strong").

13. On or around November 2023, during Strong's absence, Rishonda Holley ("Holley") was assigned as Plaintiff's Acting Supervisor.

14. Plaintiff has disabilities as defined by the ADA and the MHRA, specifically hypertensions, severe anemia, neurological conditions, anxiety, and depression, which limit one or more major life functions. Plaintiff undergoes extensive therapy and is prescribed various medications.

15. Plaintiff's disabilities affect her ability to engage in certain life activities as they affect cognitive functioning, interpersonal interactions, and daily activities, but she has been capable of performing her job duties with reasonable accommodations and support.

16. Plaintiff's medical conditions require ongoing treatment and accommodations.

17. Beginning in 2021, Plaintiff's healthcare providers recommended she take medical leave and request workplace accommodations to address her health needs, including intermittent leave under the FMLA.

18. Throughout Plaintiff's employment, Plaintiff was subject to a hostile work environment and discrimination due to her disabilities and related leaves.

19.    On or around November of 2021, as Plaintiff was undergoing ongoing treatment with her OB/GYN, primary care physician, and therapist, Plaintiff's therapist recommended continuing short-term disability until January 2022 due to the severity of symptoms, the need for intensive treatment, and concerns regarding workplace stress exacerbating her condition.

20.    Throughout 2022 and 2023, Plaintiff continued to seek medical treatments as her conditions required consistent monitoring and care. At times, Plaintiff's conditions worsened, and she became critically ill, requiring hospitalizations and extensive medical treatments.

21.    On or around October 2023, Plaintiff's primary care physician recommended intermittent leave under the FMLA for critical iron infusions and medical monitoring to address life-threatening anemia and hypertension.

22.    As such, Plaintiff's primary care physician submitted FMLA documentation ("Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act)"). The leave dates listed on the Certificate were October 17, 2023, until April 17, 2024.

23.    Plaintiff submitted the FMLA request via the third-party leave administrator and benefits portal used by Defendant, Sedgwick.

24.    On or around November 9, 2023, Holley, as Plaintiff's new Acting Supervisor, called Plaintiff via Microsoft Teams and began aggressively questioning Plaintiff about her disability and medical leave.

25.    Holley demanded details about Plaintiff's medical condition, which Plaintiff

declined to disclose citing privacy concerns.

26. Holley also questioned Plaintiff's supervisor's (Strong) failure to inform Holley regarding the FMLA leave, despite such notifications being handled by Sedgwick.

27. Holley's hostile tone and invasive questioning caused Plaintiff significant emotional distress, exacerbating her medical conditions.

28. On or around November 17, 2023, Plaintiff received an approval letter from Sedgwick stating that her FMLA leave of absence was approved until April 17, 2024 ("Leave").

29. For the first weeks of Plaintiff's Leave, Holley sent Plaintiff excessive and harassing emails questioning Plaintiff's timecard and medical leave.

30. Holley's conduct created a hostile work environment for Plaintiff, causing her significant stress and anxiety.

31. On or around November 2023, another employee, Destiny Hoskins ("Hoskins"), witnessed Holley's harassment and discrimination towards Plaintiff during a team meeting.

32. In a witness statement submitted by Hoskins to the EEOC, Hoskin states, "[Holley] made an inappropriate comment about Keshana's ability to perform certain tasks due to her disability." Hoskin further stated that the comment was demeaning.

33. Hoskins also stated that Plaintiff was very obviously treated differently from other employees - when Plaintiff asked for assistance or additional trainings to further her skills, she was repeatedly "ignored and disregarded," while other employees received the training they requested.

34.    Finally, Hoskins stated that, in response to Plaintiff's complaints about the treatment she was experiencing, Hoskins noticed a marked increase in Plaintiff's workload and intense scrutiny being applied to her work projects.

35.    On or around November 2023, Plaintiff was unfairly disciplined for being away from her computer briefly during a fire alarm in her residence, while other employees engaging in similar behavior were not penalized.

36.    Holley questioned why Plaintiff evacuated her apartment during a fire alarm, demanding proof in the form of videos. Plaintiff provided this proof as she feared for her job, but the incident left her feeling upset, unsafe and humiliated.

37.    On or around December 2023, Holley escalated her frequent, hostile Microsoft Teams calls.

38.    During this time, Holley would send Plaintiff an excessive number of emails, often several times a day.

39.    In her emails, Holley demanded immediate and frequent updates regarding Plaintiff's medical leave status. This information was always accessible via the Defendant's internal systems.

40.    The tone of Holley's communications was harsh, impatient, and unreasonably critical.

41.    On or around December 2023, Plaintiff reported Holley's harassment to upper management representative, Donna Stanley (title unknown, hereinafter "Stanley").

42.    Plaintiff sent Stanley several emails regarding Holley's treatment and behavior, however, Stanley failed to take meaningful action to address the issue, and the

behavior continued.

43. Throughout January 2024, Holley continued to micromanage Plaintiff, disproportionately assigned Plaintiff with difficult cases, and continued to ignore Plaintiff's emails requesting support and training.

44. Holley's actions created a hostile work environment and intensified Plaintiff's anxiety, leaving her emotionally overwhelmed and unsafe in her workplace.

45. On or around February 9, 2024, Plaintiff exercised her approved FMLA leave to attend a medical appointment.

46. When Plaintiff returned to work on February 13, 2024, she was terminated during a Microsoft Teams call without prior notice.

47. At the time, Plaintiff's FMLA leave was approved through April 2024, and her termination constituted a direct violation of her federally protected rights under the FMLA.

48. Following Plaintiff's termination, she applied for unemployment benefits through the Maryland Department of Labor. Defendant contested her eligibility, asserting that her termination was due to job performance.

49. Upon reviewing the facts and the circumstances surrounding Plaintiff's termination, the Maryland Department of Labor determined that Plaintiff was entitled to benefits. Specifically, a Notice of Benefit Determination stated that, "*The claimant was discharged or suspended by Optum Services Inc on 02/13/2024 as a result of poor work performance. However, the circumstances surrounding the separation do not warrant a disqualification under section 8-1002 or 8-1003 of the Maryland*

*unemployment insurance law*."

50.  The Department of Labor's decision underscores the lack of legitimate cause for Plaintiff's termination and further supports Plaintiff's claims of pretext, retaliation, and wrongful termination.

51.  Plaintiff's therapist, Brittany Harris ("Harris"), has been working with Plaintiff since October of 2021. In a letter of support dated December 12, 2024, Harris detailed the significant challenges Plaintiff has faced due to her medical and mental health conditions.

52.  Harris' letter notes that Plaintiff's mental health has been severely and adversely impacted by life events, including the demands of her workplace, depression and ongoing health complications.

53.  Lastly, Harris emphasized that Plaintiff's participation in intermittent short-term disability leave was essential to Plaintiff's ability to focus on her mental health and receive the treatment necessary to manage her conditions.

54.  Plaintiff requested accommodations for her disability which is neither unreasonable nor burdensome for Defendant, as Defendant has previously provided Plaintiff with similar accommodations.

55.  Defendant's failure to engage in the interactive process, its refusal to accommodate Plaintiff, and its subsequent termination of her employment constitute violations of the ADA as well as the MHRA. These were acts of discrimination, harassment, and retaliation against Plaintiff based on her disability.

56.  As a direct and proximate result of Defendant's actions, Plaintiff has suffered severe

emotional and physical distress, economic loss, and a permanent impact on her ability to maintain gainful employment and pursue a stable career.

57.    Defendant was well aware of all of the above discriminatory comments and actions that Plaintiff was being subjected to throughout her employment at Defendant OPTUM.

58.    Defendant OPTUM condoned, supported, ratified, and furthered the discriminatory and hostile conduct.

59.    Defendant OPTUM willingly ignored its obligations to provide accommodation and prevent discrimination in the workplace - to the detriment of Plaintiff.

60.    Defendant OPTUM's lack of action to help Plaintiff meant that Defendant OPTUM was acquiescing to the discrimination.

61.    Throughout her employment, Plaintiff felt humiliated, stressed, anxious, depressed, fearful and frustrated.

62.    Plaintiff was terminated because of her disability, and in retaliation for engaging in protected activities.

63.    Defendant OPTUM, its employees, agents, representatives, and/or subordinates had no good faith business justification for their individual and collective actions against Plaintiff.

64.    Defendant's actions and conduct were intentional, grossly negligent, and intended to harm Plaintiff.

65.    Plaintiff suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life and other non-pecuniary losses.

66.   Punitive damages are warranted against the Defendant.

### AS A FIRST CAUSE OF ACTION
### DISABILITY DISCRIMINATION IN VIOLATION OF
### THE AMERICANS WITH DISABILITIES ACT

67.   Plaintiff repeats and realleges each and every allegation made in the above
paragraphs of this Complaint.

68.   As set forth in the paragraphs herein, Defendant discriminated against Plaintiff
because of her disability, in violation of the Americans with Disabilities Act of
1990, 42 U.S.C. § 12101, *et seq*.

69.   Defendant engaged in a pattern and practice of discriminating against Plaintiff
because of her disability.

70.   Plaintiff seeks all available remedies under the ADA, including compensatory
damages, punitive damages, injunctive relief, attorneys' fees, and costs.

### AS A SECOND CAUSE OF ACTION
### FAILURE TO PROVIDE REASONABLE
### ACCOMMODATIONS IN VIOLATION OF
### THE AMERICANS WITH DISABILITIES ACT

71.   Plaintiff repeats and realleges each and every allegation made in the above
paragraphs of this Complaint.

72.   As set forth in the paragraphs herein, Defendant failed to accommodate Plaintiff's
requests due to her disability, in violation of the Americans with Disabilities Act of
1990, 42 U.S.C. § 12101, *et seq*.

73.   Plaintiff seeks all available remedies under the ADA, including compensatory
damages, punitive damages, injunctive relief, attorneys' fees, and costs.

## AS A THIRD CAUSE OF ACTION
## RETALIATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT

74.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

75.    As set forth in the paragraphs herein, Plaintiff engaged in protected activity by requesting accommodations for her disability to Defendant.

76.    Plaintiff was retaliated against and terminated for her requests for accommodations due to her disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

77.    Plaintiff seeks all available remedies under the ADA, including compensatory damages, punitive damages, injunctive relief, attorneys' fees, and costs.

## AS A FOURTH CAUSE OF ACTION
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT (FMLA)

78.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

79.    As set forth in the paragraphs herein, Plaintiff was eligible for FMLA leave and used intermittent leave for medical treatment as approved and recommended by her healthcare providers.

80.    Defendant interfered with Plaintiff's FMLA rights by questioning her leave, creating a hostile work environment, and terminating Plaintiff while she was on leave, depriving her of job protections guaranteed under the Act.

## AS A FIFTH CAUSE OF ACTION
## DISABILITY DISCRIMINATION IN VIOLATION
## OF THE MINNESOTA HUMAN RIGHTS ACT (MHRA)

81.    Plaintiff repeats and realleges each and every allegation made in the above
paragraphs of this Complaint.

82.    As set forth in the paragraphs herein, Defendant discriminated against Plaintiff
because of her disability, in violation of the Minnesota Human Rights Act, Minn.
Stat. § 363A.01, *et seq*.

83.    Defendant engaged in a pattern and practice of unlawfully discriminating against
Plaintiff because of her disability.

84.    Plaintiff seeks all available remedies under the MHRA and relevant Minnesota laws,
including compensatory damages, punitive damages, injunctive relief, attorneys'
fees, and costs.

## AS A SIXTH CAUSE OF ACTION
## FAILURE TO PROVIDE REASONABLE
## ACCOMMODATIONS IN VIOLATION
## OF THE MINNESOTA HUMAN RIGHTS ACT (MHRA)

85.    Plaintiff repeats and realleges each and every allegation made in the above
paragraphs of this Complaint.

86.    As set forth in the paragraphs herein, Defendant failed to accommodate Plaintiff's
requests due to her disability, in violation of the Minnesota Human Rights Act,
Minn. Stat. § 363A.01, *et seq*.

87.    Plaintiff seeks all available remedies under the MHRA and relevant Minnesota laws,
including compensatory damages, punitive damages, injunctive relief, attorneys'

fees, and costs.

## AS A SEVENTH CAUSE OF ACTION
## RETALIATION IN VIOLATION
## OF THE MINNESOTA AINTI-DISCRIMINATION ACT (MHRA)

88.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

89.    As set forth in the paragraphs herein, Plaintiff engaged in protected activity by requesting accommodations for her disability to Defendant.

90.    Plaintiff was retaliated against and terminated for her requests for accommodations due to her disability, in violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.01, *et seq*.

91.    Plaintiff seeks all available remedies under the MHRA and relevant Minnesota laws, including compensatory damages, punitive damages, injunctive relief, attorneys' fees, and costs.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

1.    For compensatory damages for loss of income, emotional distress, and all other damages available under the ADA and the MHRA, in an amount to be determined at trial;

2.    For treble damages as allowed by Minn. Stat. § 363A.29, subd. 4;

3.    Damages for the wrongful disclosure of Plaintiff's private information to third parties in an amount to be determined at trial;

4.    For attorneys' fees, costs and disbursements incurred herein;

5.  For leave to amend the Complaint to include a claim for punitive damages;

6.  For any other relief to which the Court deems the Plaintiff is justly entitled; and

7.  For a jury trial on all issues so triable.

Respectfully submitted this 20th day of January 2025.

*/s/ Ryan Peterson*
Ryan D. Peterson, MN #0389607
CONSUMER JUSTICE LAW FIRM PLC
6600 France Ave, Suite 602
Edina, Minnesota 55435
E: rpeterson@consumerjustice.com
T: (651) 315-7656
F: (480) 613-7733
*Attorneys for Plaintiff*
*Keshana Dorsey*